Augustin BILKA, Plaintiff,

v.

**BLUE BELL, INC., Pension Committee of the Blue Bell Pension Plan, and The Profit Sharing Committee of The Blue Bell Savings, Profit Sharing, and Retirement Plan, Defendants.**

No. C–87–615–G.

United States District Court,
M.D. North Carolina,
Greensboro Division.

May 11, 1989.

## MEMORANDUM OPINION

ERWIN, Chief Judge.

Plaintiff Augustin Bilka filed this action on September 15, 1987 pursuant to the civil enforcement provisions of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. § 1132(a)(1)(B) (West 1985), against defendants V.F. Corporation as successor by merger to Blue Bell, Inc., Blue Bell, Inc. (Blue Bell), the Pension Committee of the Blue Bell Pension Plan, and the Profit Sharing Committee of the Blue Bell Savings, Profit Sharing, and Retirement Plan. Plaintiff contends that he was wrongfully denied benefits due to him under the Blue Bell Pension Plan and the Blue Bell Savings, Profit Sharing, and Retirement Plan following his termination from defendant Blue Bell's employ. Prior to trial, defendant Blue Bell satisfied plaintiff that the corporation possessed assets sufficient to satisfy a possible judgment against it in this action, and plaintiff then took a voluntary dismissal as to defendant V.F. Corporation pursuant to Rule 41(a) of the Federal Rules of Civil Procedure.

This court conducted a bench trial on plaintiff's claim against the remaining defendants on March 17, 1989. Based upon the testimony, documentary evidence, and arguments of counsel, the court makes the following findings of fact and conclusions of law.

### Findings of Fact

1. Plaintiff Augustin Bilka, a native of Czechoslovakia, immigrated to the United States in 1968 and became an employee of defendant Blue Bell, Inc. on March 17, 1975. Subsequently, he became an American citizen. Starting in August 1975, plaintiff was stationed in defendant's European headquarters in Brussels, Belgium in the Technical Services Department.

**510**

2. As an American citizen serving Blue Bell at an overseas facility, plaintiff was eligible to participate in defendant's two benefit plans, the Blue Bell Savings, Profit Sharing, and Retirement Plan (hereafter sometimes the profit sharing plan) and the Blue Bell Pension Plan (hereafter sometimes the pension plan); and from 1977 until his termination in 1984, plaintiff participated in both plans.

3. Blue Bell terminated plaintiff on September 30, 1984. At that time, plaintiff was manager of the Textile Technical Services Department which was responsible for establishing quality standards for and auditing the quality of fabrics from Blue Bell's suppliers.

4. Plaintiff was not terminated for misconduct or poor job performance. Rather, plaintiff's termination was part of a reduction of Blue Bell's European operations which included the elimination of plaintiff's entire department.

5. Both the profit sharing and pension plans in which plaintiff participated provided that if termination resulted from a "Qualifying Layoff," the participant would receive immediate full vesting of his interest in the plans. Section 2.30 of the profit sharing plan (Plaintiff's Exhibit 1) and Section 2.27 of the pension plan (Plaintiff's Exhibit 2) define a qualifying layoff as "[t]ermination of employment as a result of a reduction or cessation of Company operations at a Participant's work location, but only if specifically so designated by the Committee on a nondiscriminatory basis."

6. After receiving notice that he would be terminated, but before ceasing working for Blue Bell, plaintiff made inquiries of defendants expressing his belief that he was fully vested in his profit sharing and pension plans. Defendants did not respond to plaintiff's inquiries prior to his termination.

7. In December 1984, plaintiff wrote to defendants stating his belief that his right to payment had automatically vested on account of his qualifying layoff and made a claim for the benefits he believed were due him. Plaintiff's Exhibit 3.

8. On January 10, 1985, Robert N. Allen, manager of Blue Bell's Employee Benefits Department, responded to plaintiff's December 1984 letter by informing him that defendant Blue Bell Pension and Profit Sharing Committee, composed of E.J. Bauman, K.O. Tutterow, and Bland Worley, had not designated plaintiff's termination as a qualifying layoff; and, therefore, he was not fully vested in the plans. Plaintiff's Exhibit 4.

9. On February 24, 1985, plaintiff wrote Allen informing him that he did not accept defendants' refusal to designate his termination as a qualifying layoff and requested further consideration of the matter. Plaintiff's Exhibit 5. Blue Bell's Pension and Profit Sharing Committee reviewed the matter, declined to designate plaintiff's termination as a qualifying layoff, and Allen so informed plaintiff by letter on March 15, 1985. Plaintiff's Exhibit 7.

10. The standard criteria applied by the Pension and Profit Sharing Committee in determining whether to grant a qualifying layoff designation were as follows: (a) a large number of plan participants becoming unemployed with little or no opportunity for re-employment in the area or in another Blue Bell facility; (b) the cost to Blue Bell of granting the qualifying layoff designation; and (c) if Blue Bell operations were being sold, the quality of the benefits plans maintained by the acquiring concern. These standard criteria, which disclose no improper motive on defendants' part, were applied by defendants in plaintiff's case.

11. Through much of 1984, Blue Bell, Inc. was the subject of takeover speculation, and the company's management considered taking Blue Bell private in a leveraged buyout around the time of plaintiff's termination.

12. After Blue Bell informed plaintiff that he would be terminated, the parties discussed the possibility that plaintiff might be relocated to a Blue Bell facility in the United States, but these discussions did not result in an agreement.

13. After being terminated, plaintiff was unsuccessful in finding employment in Brussels.

14. Plaintiff eventually returned to the United States and currently resides in Roswell, Georgia.

### Discussion

■ Plaintiff brings this action pursuant to the civil enforcement provisions of the Employee Retirement Income Security Act (ERISA). 29 U.S.C.A. § 1132. That section provides in relevant part that:

A civil action may be brought—

(1) by a participant or beneficiary—

. . . .

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. . . .

29 U.S.C.A. § 1132(a)(1)(B).

Although Section 1132(a)(1)(B) clearly authorizes private civil actions to recover benefits or enforce rights under the terms of a covered plan, it does not set forth the appropriate standard of review for actions pursuant to Section 1132(a)(1)(B) challenging benefit eligibility determinations. In order to fill this gap, over time, the federal courts adopted the arbitrary and capricious standard developed under 29 U.S.C.A. § 186(c) (West 1978), a provision in the Labor Management Relations Act (LMRA). *Firestone Tire and Rubber Co. v. Bruch,* — U.S. —, —, 109 S.Ct. 948, 953, 103 L.Ed.2d 80 (1989). However, in its recent *Firestone Tire and Rubber Co. v. Bruch* decision, the United States Supreme Court held that the wholesale importation of the arbitrary and capricious standard into ERISA actions was unwarranted, and stated that "LMRA principles offer no support for the adoption of the arbitrary and capricious standard insofar as section 1132(a)(1)(B) is concerned." *Id.*

Rather, the Court held, in developing a " 'federal common law of rights and obligations under ERISA-related plans,' " quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1558, 95 L.Ed.2d 39 (1987), courts should be guided by principles of trust law. *Firestone,* — U.S. at —, 109 S.Ct. at 955. In establishing a new framework for review of benefit deter-

minations, the Court held that if the plan does not give the employer or administrator discretionary or final authority to construe uncertain terms, courts should review the employee's claim *de novo* by looking to the terms of the plan and other manifestations of the parties' intent. *Id.* However, the Court held that "[t]rust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers." *Id.*

Applying the foregoing principles of law to the case at hand, it is clear that this court must review defendants' denial of qualifying layoff status to the plaintiff under a deferential standard. The relevant sections of the profit sharing and pension plans define a qualifying layoff as "[t]ermination of employment as a result of a reduction or cessation of Company operations at a Participant's work location, *but only if specifically so designated by the Committee on a nondiscriminatory basis.*" (Emphasis added.) Plaintiff's Exhibit 1, Section 2.30 and Plaintiff's Exhibit 2, Section 2.27. Thus, the profit sharing and pension plans explicitly grant discretionary powers to the Pension and Profit Sharing Committee in determining which terminations would receive the qualifying layoff designation.

Under this relaxed standard of review, the Pension and Profit Sharing Committee's decision to deny a qualifying layoff designation to plaintiff's termination may only be reversed if it constituted an abuse of discretion. *Firestone* at —, 109 S.Ct. at 955. An employer's or plan administrator's exercise of discretionary powers constitutes an abuse of authority where there is no reasonable basis for the complained of action.

■ That was not the case in defendants' determination on plaintiff's benefits. Plaintiff's termination resulted from overall reductions in Blue Bell's European operations. In determining whether to grant plaintiff's termination qualifying layoff status, the Pension and Profit Sharing Committee applied standard criteria and reached the same result as in the cases of

**512**

others situated similarly to plaintiff. The court notes with concern the harsh impact that corporate takeovers and consolidations can have on the employee benefit plans of acquired companies; however, in the plaintiff's case, it was not management's desire to amass cash for a leveraged buyout, as plaintiff asserts, but legitimate business considerations that led to defendants' refusal to designate plaintiff's termination a qualifying layoff. Thus, the court is of the opinion that the defendants did not abuse their discretion under the plans by denying plaintiff's termination a qualifying layoff designation.

For the foregoing reasons, the court concludes that defendants did not wrongfully deny plaintiff benefits due him under the Blue Bell pension or profit sharing plans.

### Conclusions of Law

1. The court has jurisdiction of this action pursuant to 28 U.S.C.A. § 1331 (West Supp.1989) and 29 U.S.C.A. § 1132(k) (West 1985).

2. The Blue Bell Savings, Profit Sharing, and Retirement Plan and the Blue Bell Pension Plan are both employee benefit plans within the coverage of the Employee Retirement Income and Security Act (ERISA), 29 U.S.C.A. § 1001 et seq. (West 1985).

3. Defendant did not violate 29 U.S.C.A. § 1132(a)(1)(B) in denying plaintiff's termination a qualifying layoff designation.

4. A Judgment will be entered in keeping with this Memorandum Opinion.